Good afternoon. My name is Patrick Durkin from Collin, Haskins, Nicholson, and Manchetti. I represent Joe Morocco, who fell and hurt his knees after he slipped and fell in a parking lot at a Lowe's store while he was on a business trip in Maryland. Arbitrator Hennessey awarded workers' compensation benefits. The Illinois Workers' Compensation Commission took those benefits away. We're here today to try to restore those benefits to Joe. Arbitrator Hennessey found that Joe sustained any accident that arose out of and in the course of his employment. He specifically found that Joe was a credible witness. Are we interested in that? I'm sorry? Are we concerned with the arbitrator found? Yes, this is a manifest way because of the commission reversed on the credibility question. That's where we're interested in, isn't it? Yes. The commission did that and why? Yes. Did they try to make it clear in their decision as to why they found him not credible? They listed six different items and concluded that he failed to prove accident. However, none of the items went to the issue of accident. The six items that they were talking about had to do with discrepancies in the medical record, discrepancies in language about whether or not he had problems with doctors. A bad experience with doctors. Inconsistent histories. For example, the therapy. Were they correct on his not being credible in respect to what he had done in the past? There was nothing about the past. What you have is the first medical record in February does not mention a work history of an accident. Wouldn't that be important? That could be important, but the failure, the lack of something in the medical record doesn't disprove that the accident occurred. You're absolutely correct, except it does go, I think you'd have to concede, to the credibility of the claimant. You've got some issues here. According to the medical records from the facility the claimant was seeing, he consistently saw medical treatment for various medical conditions. On February 16th, as I understand it, it was two weeks after the alleged incident, and he doesn't make any report to his doctor about any injury to his knee or makes any complaints about his knee. Now, why wouldn't that bear his credibility and believability? Well, the thing about that is that is not contained in the record. What was contained in the record was not under his control. That was under the facility. And the treating physician, Dr. Willenhammer, addressed that separately later on. So this is something where the treating physician does support our client, Joe Malacco. It's not that the treating physician walks away from him, the treating physician supports him. Similarly, the boss, the boss supports him as well. And I think this is different from the other credibility cases, because in this case, in order to go along with the commission, you have to deny the credibility of the boss as well as the treating physician. I don't think there's any water here. I know. I'm dying here. I'm sorry. We have none either. The commission, in their decision, wrote that Joe did fall in the parking lot. This was their second finding of fact. And then as they went on, they felt that there were significant inconsistencies. But unlike arbitrator Hennessey, who specifically commented on Joe's credibility, the commission ‑‑ Well, let me just, not to interrupt, but Willenhammer was his, a doctor he picked, correct? Willenhammer is his long-term primary care, yes. Then, according to Willenhammer's records, when he saw the claimant, the claimant at one point reported the injury in question stemmed from him twisting it in a store. Yes. So now that's another version of what happened. Doesn't that bear on his credibility? Well, I think the thing about this was addressed by the arbitrator because there were a series of events that all led back to the initial incident, which was the fall in the parking lot. You subsequently have a giving away in the motel the next day. You have an incident where there's a twisting on the train at the O'Hare Airport. You have this thing in the store that you were talking about. And then finally you have this thing about rock salt. I mean, is rock salt inconsistent with slipping on ice in a parking lot? How many falls did he have within a year period of time of this thing? Well, he had the fall in the parking lot. The giving away wasn't the fall. He caught himself. The incident with the train at O'Hare was a twisting and he described it at the arbitration and he gave his pain levels. And then the fall, the slip and fall in the store, so there are a number of things that come out. But it's got to be read in context of the whole history, which starts with the incident in the parking lot. Is that what the commission did? Did they look at all of it and found that for all the inconsistencies that it was not credible? They came up with this credibility thing without taking into account. If you're going to buy that he's not credible, you also have to conclude that his boss is not credible. And you have to conclude that his doctor's not credible. Then you have a conspiracy. And I think it's against the manifest way to go with the conspiracy theory as opposed to saying, no, it's far simpler. The commission got it wrong. I think that the commission got this wrong. What about his testifying? I'm having a problem with this. The claimant clearly testified he didn't seek treatment for his knees prior to March 2004 because of past negative experiences with doctors. Did he not testify to that? He did. And then there was testimony that was really inconsistent with his medical records that he consistently sought treatment for a variety of medical conditions from all sorts of different doctors for eight years. Doesn't that bear on his credibility? He was under medical treatment for a variety of things. But I think the bad experience, in the record there was something about needles, and it's relevant on point for this case because he refused a cortisone injection from Dr. Fuentes. That's in the records. But also I think that what you're talking about here, too, is the use of language. Have a bad experience with doctors. Who likes to go to doctors? Doctors are generally negative experience. What the claimant is doing is what so many of us do where we hope that something gets better on its own. And I think that this is why there was a delay in medical treatment. And it's very clear to me that he did not seek medical treatment the night of because he's out of town on a business trip and he's leaving the next day. Let me ask you a pointed question. As you accurately stated the test, is the commission decision against the manifest way to the evidence? That means an opposite conclusion is clearly apparent. Rather than just picking apart their findings and credibility, tell us why an opposite conclusion is clearly apparent that supports the claim. Yes. Very succinctly. The commission found no accident. Nothing in the record says that the fall in Maryland did not occur. There's nothing to rebut that. You. What are we to do with the notion that the commission did not concur with the credibility findings of an arbitrary? Do you really want us to find that there should be some type of heightened scrutiny when the commission doesn't follow the arbitrator on credibility findings? Well, in the SNH case, the phrase was an extra degree of scrutiny. Now, I'm not saying that there should be an extra degree of scrutiny. I think that you should scrutinize everything very carefully. I think based on this record, the way that the commission wrote their decision is against the manifest way because there's nothing that shows the accident, the fall in the parking lot didn't happen. Everything in the record goes back to that in one way or another. Maybe they didn't believe it happened because of all the inconsistent statements the claimant made. Maybe that's what it's about, right? Couldn't they make that legitimate good faith conclusion if there's so many conflicting stories about how it happened and when it happened that they don't believe anything? Well, I think that that's a wrong thing to do because then they're not believing anybody. They're not believing the boss. They're not believing the treating doctors. The treating doctor is not a witness to the occurrence. All he's doing is reporting histories that the claimant is giving him. So the treating doctor is not a witness that's being believed or disbelieved. It's just what's in his records. Right, and I think that this is a big problem, especially when you have multiple providers with people writing little bits and pieces of information in a record. Records sometimes are incomplete or inconsistent, and that's something that we deal with. And what the arbitrator did was he listened to Joe and he looked at the stuff and he said, I believe. And that's what we're asking you to do. I think that, you know, if you go along with the commission decision of no accident, then you have to also conclude that the boss, Mark Overgaard, is involved in this somehow, and that the treating physician, Willinghamer, is involved. And my question to you is what do these folks have to gain? What's in it for them if Mr. Morocco has a claim or doesn't have a claim? What did Willingham say that the commission suggested was untrue? Well, the thing about Willingham is that he wrote a couple of letters later that year in 2004 and then the next year in 2005. And his letters were to clarify the situation. And his computer records are very similar to a lot of medical records. You're not really able to tell what's in them and what is the computer format. And they're very minimal. Sometimes there's detail, sometimes there's not. What you have is what you have. Now, what the arbitrator was able to do was come up and believe the testimony of the witnesses in concordance with the records. For the commission to conclude that there was no accident is against the manifest way because there's absolutely no evidence to show that it didn't happen. Or that this person is a bad person or that it happened, you know, two years earlier in a car accident or something. Well, is it merely the fact that the accident, you're saying they didn't just prove the accident happened. Doesn't there have to be, isn't there a missing element here, the accident and the causal connection? Well, they never got to causal. Well, you've got, if you look at, there is a number of different descriptions given by the claimant as to how this accident happened. You've only gotten to a couple of them. His physical therapy records reportedly refer to a February, March 2004 date of injury. Dr. Fuentes notes he had accidents at around the same time as the injury claimed here when he fell getting out of his car and he fell getting out of bed. Let me address those one by one. Counsel, please. My name is Richard Lankoff with the law firm of Bryce Stanley and Lankoff. I represent Best Buy in this case. This is a very simple case. This case boils down to whether someone who very articulately and clearly stated under oath at trial that they injured themselves in a very specific manner, whether that person should be able to tell the same story to six or seven other different people when he acknowledged under oath that it was very important to tell the truth and give a detailed and accurate history to all of his doctors. Now, I agree that this case boils down to whether the commission's decision is against the manifest weight. It isn't. That being said, I would be remiss if I didn't address a couple of the points in counsel's brief. It's instructive that petitioner begins their brief with a discussion of the length of the decision. I think it's an example and it shows that there is no real substance to their request that you overturn the lower court's decision by focusing on the length. Literally, counsel's brief opens by saying that arbitrator Hennessey's decision is 16 pages long versus the three pages that the commission spent and the paragraphs that the judge spent in the order. What does the length of the decision have to do with anything? It doesn't matter. How long does it take to explain that the petitioner had no credibility? That being said, even if size did matter, even if the length was at issue, if you look at the arbitration decision, arbitrator Hennessey, of these 16 pages, spends one paragraph, about 12 lines, dealing with accident versus the three pages that the commission spent. What about, he's hanging his head on one thing that I think, you know, ostensibly has some appeal, is that Mark Overgaard, his supervisor, clearly testified that he observed a Klaman limping in February of 2004. Klaman told him he injured his knees slipping outside a Lowe's store in Maryland. So, he's got something at least to point to, does he not? Not credible, Judge. Well, very simply, as it was pointed out by the commissioner, Mr. Overgaard had every incentive to support his friend's story. Arbitrator Hennessey said that they socialized. That doesn't tell half of the story. In fact, Mr. Overgaard testified, and he admitted that they did more than socialize. Hold on a second. Overgaard never said he witnessed the event, did he? Correct. So, what's he lying about? He's not lying about anything. This Klaman told him, weeks after the event, that he injured himself when he fell down in a store. So, he couldn't have told him that. Big deal. So, if Overgaard never said he saw it, so what's there to say that Overgaard is lying? I agree. Even if that's true, big deal. All that means is that Petitioner, two weeks later or sometime later, finally decided to report this alleged accident. It runs directly contrary to all of the other histories that he gave. Why is it that he was so articulate and remembered how to report the accident when he told his friend, but given the chance to do so with six or seven doctors, he failed to do so? What I don't understand here is the arguments being made that in order to disbelieve the Klaman, we have to disbelieve Overgaard and Willingham. I don't think we have to disbelieve either of the two of them. Well, I think Willingham, Wildenheimer, whatever his name is, I don't think he's credible at all, Judge. In his reports, he wrote two letters, to whom he may concern letters, in which he bent over backwards to find that an incident occurred that caused the condition. And he was wrong. In that report, if you read the first report, Wildenheimer says that, I'll be happy to read it, Wildenheimer says that the only incident in his medical records is a fall in a parking lot. Wildenheimer, I guess, missed all the other incidents that existed, that are clearly in the records. How could Dr. Wildenheimer say on 820.04 that a fall in a parking lot was the only incident in his medical records when we know about the fall on the tram, we know about the incident stepping on a bed, we know about the other fall. Wildenheimer was wrong. He just missed it. Wasn't Wildenheimer the one who wrote in March of 2004 that the complainant was complaining of right knee pain two weeks after twisting it in a store? Yes. Can you write that? Yes. Does that help your case? That doesn't make Wildenheimer not a truth teller. On April... Physical therapy report says he twisted his knee and he fell on his knees when he fell out of his car and he fell out of bed. Tonino says, based on the inconsistency of the history, I can't figure out how this guy got hurt. I agree with all that, Judge. All these doctors were told different things, different stories. Not one of them were told the story that Petitioner wants you to believe. The story being on 130.04, he was in Maryland, in Lowe's parking lot, stepped out of his car, slipped on ice, hurt his knees, felt pain to the degree of 8 out of 10. Why is it so hard to tell that story to six or seven doctors? Why was he a poor historian to all his doctors, but he wasn't a poor historian on the stand? Why did he suddenly become a good historian at that point? The reason being is the accident didn't occur as he alleged. As Your Honor pointed out, you would expect that someone who hurt themselves to the degree that this person said, again, fell on their knees, felt pain to the degree of 8 or 9 out of 10, very severe pain, you would think they were treats. Maybe not that day, maybe not the next day, maybe not the next day, but sometime during the 52 weeks prior to the time that this individual first saw a doctor. And you would expect that when that person first saw a doctor, you would mention something about this incident. You would say, yes, doctor. When afforded the opportunity to give a history, you would say, yes, I hurt myself on 130.04 in a parking lot. Instead, he never says that ever, and that goes directly to his credibility, which is at issue. It goes directly to accident. How can you believe him that he suffered an accident the way he alleges and award him benefits if he couldn't tell a basic, simple story, when afforded the opportunity to do so to all of his doctors? It just doesn't make any sense. Now, again, as your Honor, State of Counsel argues, the petitioner would have you believe that he was afraid of doctors. He didn't go to a doctor because he was afraid. It doesn't make any sense. Not consistent with the evidence. He was not afraid of doctors. He had treated since the mid-80s for everything from back pain to fatigue to hypothyroidism consistently. This is someone who was not afraid of doctors. He wasn't bashful about going to the doctor. Yet the one time that he falls traumatically, hurts his knees, suffers a really painful injury to the degree of almost 10 out of 10, he decides not to treat. And there's a reason for that. Under oath, he says, oh, I had a bad experience with doctors. It's convenient that the only bad experience that he had with doctors prevented him from treating for this incident, but not the dozens, if not hundreds of times he saw doctors going back to the 80s. Counsel would have you believe that these ambiguities are not a big deal. That it's not a big deal that there's all these inconsistencies. If anyone should be talking about a conspiracy, it should be us. There's no conspiracy. But counsel is the one who argues that these doctors are wrong. That even though they said one thing, they actually meant something else. And even though they wrote a very specific history, that your honor should actually disregard that and believe something else. That's the conspiracy theory. That somehow these doctors had an incentive to lie. To not write down verbatim what the claimant told them. Why would they do that? As counsel asked you, what incentive do these different doctors, everyone from the physical therapist to Dr. Fuentes, what incentive do they have to hear one thing from the claimant and write down something else? There must be a conspiracy. It doesn't make any sense. They wrote down the history exactly as the petitioner told them, and that history was all over the place. It made no sense. Your honors, the bottom line on this case is that the claimant would have you overturn the unanimous decision of the commission and the circuit court and find that despite all of the conflicting evidence in this case, put aside all of the disparities in testimony, put aside all of the conflicts, put that all aside because, just because. Because petitioner deserves benefit despite all of this evidence and would have you believe that the manifest weight of this evidence supports an overturning of the unanimous commission. I don't think that the evidence supports that. I think this is a case where we respectfully request that this court uphold the decision of the commission. Thank you, counsel. I'd be happy to take any questions. Thank you. Joe Morocco is not afraid of doctors. The testimony was he had a bad experience. The physical therapist wrote, slipped on rock salt. I don't think this is inconsistent with slipping and falling on ice. Rock salt is used, you know, in parking lots where it's spread on ice. That's completely consistent. The Dr. Fuentes notes, there was that one particular note that you were referring to. Part of it is handwritten, part of it is typewritten. The handwritten part says slip and fall getting out of a car. The type part says fell in the motel. Actually, both are correct because this is consistent with Mr. Morocco's testimony at arbitration. All of the things lead back to the fall in the parking lot at Lowe's. I urge you to overturn the decision of the commission and remand for additional, to reinstate the benefits and remand for additional actions as needed. Thank you.